Good morning, your honors. May it please the court, my name is Keith Krakauer and I represent Intervenor Appellant McKesson Corporation. With me at council table today is my partner Jim Lyons and second away from me is counsel for the SEC. I know I have 20 minutes of argument time and what I have done is I've given 6 minutes of that time to counsel for the SEC who's flown out from the main office of the SEC. And in order to make sure the flight was not in vain, what are we supposed to do when the 6 minute time comes, do we say sit down? I will do my best to keep an eye on the clock, your honor. And then I'll be saving about 4 minutes for rebuttal. Given that 10 minutes that I'd like to use at the outset, the two main points that I would like to try to get to with the court are as follows. First of all, that McKesson's interest in protecting its attorney client privilege and its attorney work product protection remains very tangible and live as we sit here today and is not, as the defendants contend, moot. The second point is that the facts in this case are truly unique and very distinguishable from the whole panoply of cases out there, which I'll refer to generically as a selective waiver line of cases, including the Sixth Circuit's decision in the Columbia HCA case. Could you explain and clarify, because you mentioned select waiver and yet, as I read your reply brief, you disavow select waiver. You say there was no waiver at all. Yes, and this may be just a terminology issue, your honor, and I'll stay away from that if it's confusing. We're not adopting what I regard to be the selective waiver doctrine as set forth, for instance, in the Eighth Circuit's diversify case. What do you want to call it? What is it you're asking this Court to decide when the document that you prepared and sent to the SEC and later to the U.S. Attorney's Office is going to be disclosed? Whether you call it selective waiver or not, the argument which we've tried to set forth in our briefs is that given the nature of the confidentiality agreement that's in place, and I'm prepared to address the provisions that defendants say are at issue in that confidentiality agreement, given that, given the unique facts of this situation, which differentiates it from all these other decisions that are out there, namely, that McKesson was not adverse to either the SEC or the U.S. Attorney's Office from the start of this investigation and right up until the present day. Well, but did you have assurances from either the SEC or from the government that McKesson, as a corporate entity, was going to be exempt from any kind of prosecution? We had a representation from the United States Attorney's Office, which is embodied in that we were neither a subject nor a target. Right. At that time. At that time. And more recently, and this is in the record, received a letter, which we've submitted to the court and asked the court to take judicial notice of, from the U.S. Attorney's Office confirming that at no time were we ever a subject or target. No, but that may be the case. But when you're entering into, and what's, I mean, I'm not belittling what you did or calling into question the strategic thinking of it, because there's some very, as the DOJ memo indicates, Larry Thompson's memo indicates, there's a governmental interest in getting cooperation from McKesson, in this case a successor or acquiring corporation. But in terms of the traditional attorney-client privilege and the work-product privilege, when one does these internal investigations, they're normally internal. And yet from the get-go, the internal investigation was structured so that it would not only report to McKesson's Board of Directors or its Audit Committee, it was structured to report to the SEC and then also to the U.S. Attorney's Office. So when you're interviewing your witnesses in McKesson, you're generating information that is on its face, designed to go outside the corporation in the context of potential criminal prosecution. It is absolutely being generated in a context where we're cognizant that we have made a commitment to the government that at the end of this investigation, we are going to share with it the fruits of that investigation in the form of that work-product under certain terms and conditions. But it is not being generated, and I think the defendants have tried to make this argument in their papers, it's not being generated with an eye towards preparing a report for the government. From the moment that McKesson found out about this restatement issue, it reported the issue directly to the SEC, and it was contemplated from the outset, and many shareholder litigations were filed right from the get-go, contemplated that our firm would be representing an independent committee, the Audit Committee of outside directors of the Board, that it would also be, on a going-forward basis, representing the company in connection with the many litigations that were filed. Look what you're doing. What you are doing, and as far as I know, in this case, we don't have any of the shareholder litigation demands for discovery, correct? I mean, you may be affected by the ruling in terms of a waiver in those litigations as other courts. But just looking as other courts may have addressed. But what I'm concerned about here, understanding the dynamic, that whether or not it was being prepared for the SEC and for the U.S. Attorney's Office, it was clearly being prepared with the knowledge that it would be turned over to them, and that they would then, in turn, use it, if not against McKesson, were going to be using it against others. Former McKesson officers, I mean, former HBOC folks. Now, in the context of the Brady requirement, what did you ever expect when the document itself, on its face, says that they may use it in the prosecution? That you could generate information that would be adverse to certain individuals associated with the corporation, the former corporation, and that the government would not have to turn that over? That the government could use you as its investigative arm and then somehow avoid its Brady obligation? What we expected, Your Honor, is precisely what has transpired to date, which namely that we have had in the district court below the support of the United States Attorney's Office, which very clearly before Judge Jenkins went on record supporting the argument that there was not a waiver of privilege or work product. We have the SEC. Well, that's great for the government, but what about the defendants who were entitled to exculpatory evidence? That's the posture of this case, isn't it? It is absolutely the posture, and it's something that I wanted to lay out at the outset, which is that we're in a slightly different posture today from even when these briefs were filed on appeal, and we informed the court jointly with the defendants in a letter in July about this, but there have been some rulings and some related civil litigation, pursuant to which these defendants already in connection with a related state court proceeding, they have the report. They have the interview memos. Well, that may be, but what we're talking about is the case that's presented to us, as I understand it, which is in a context, in a criminal prosecution, shifting away from the FCC aspect, but in a criminal prosecution, when you turn it over to the Department of Justice, where what they're interested in doing is putting together a criminal indictment against individuals, whether or not it's McKesson, but criminal individuals, it's going to use those materials to develop its case, and it has a constitutional obligation. If your interviews show that some of those defendants were acting under orders of higher-ups or that they were not knowledgeable, we know all the kind of canlay defenses and other things that have been put out there. Why is it not the case that just, at least in the context of this case, there's no doubt that the defendants are entitled to the what you turned over, what you furnished to the government? I think that given the factual posture now, which is that they have the report, albeit under terms which prohibit them from using it in the criminal case, what's required is an accommodation between McKesson's ongoing valid work product and privilege interests versus the Brady and Rule 16 interests of these defendants. It's not our position, as we sit here today, given the way the factual record has developed, that they should be prohibited from using those materials in the criminal case. Our position, rather, is given that they have the report already from the other proceeding, that the accommodation that the district court should be clearly instructed by this court to make is that a protective order has to be put in place analogous to the one that was put in place in the related criminal proceeding against Richard Hawkins, the former CFO of the company, and a protective order has been entered in that case by Judge Jenkins, which precludes the sharing of the report or the interview memos with anyone who was not themselves bound by the protective order, so that they're able to fully use it in their defense. But as I understand it, the protective order might be shaped differently depending on whether they have the materials pursuant to Brady or whether they have the materials pursuant to a ruling that there's been a waiver of attorney-client and work product. Although I think in the Hawkins matter, I think it's on exactly parallel footing where the court made a conclusion that he was entitled to it under Brady and Rule 16. Consistent with his finding here, there had been a waiver of work product and privilege and imposed the protective order that I'm now describing. And the issue, which, you know, to get to the crux of it, might really be that defendants in this case may not be happy with the type of protective order that Judge Jenkins entered in the Hawkins matter because they may say, for instance, that they want to share it with third parties, with potential witnesses who are not bound by the protective order. And that's the problem that the case would be. But would they, in a normal Brady circumstance where the government produces exculpatory or useful information, what would be the rights of the defendant to use the material in that respect? Would they be entitled to go off and use it to contact other witnesses? Typically, we wouldn't be dealing with this confidentiality issue, and so they'd be able to do with it whatever they want. But what you're trying to do is put constraints on a constitutional right of defendants to make use of what they're entitled to under Brady. You want a protective order that says, because we are the source of the government's information, we get to put tags on it. For understandable reasons. I understand what your client's concern is. But nonetheless, what you're trying to carve out, it seems, and that's why I asked what you were looking at, what are you calling this exception to waiver, you are asking this Court to say that in the context of turning over materials to a prosecutorial law enforcement agency, you are entitled to assert a confidentiality restriction that sort of is tagged on to the Brady disclosure, which then, looking from the defendant's standpoint, is going to have to be something they have to contend with that they would not otherwise have to contend with under produced Brady materials. That's correct. But what we're asking for is no different from what other courts have imposed in similar situations. And I'll refer, it's in our briefs, but this Court's. But you put the defendant in a terrible position vis-a-vis an expert witness, for example. The foundation may come to light by reason of the report, and you're saying you can't disclose that to your expert who's preparing to testify in a criminal defense. No. Actually, the protective order we're contemplating would permit precisely that. It permits disclosure to experts, among a number of other. And the experts under the same order? Under the same protective order. And a party to it to begin with? Yes. And indeed, the order that, and I realize that I'm way over when I wanted to stop for the SEC. We'll let you say what you need to say. Go ahead. But the protective order that the district court entered in the Hawkins matter actually contemplates precisely that these types of third party experts, jurors, the court, filings, all of those things can be made. And indeed, it contemplates that if they want to use some elements of what's in the report in a hearing, in a filing, a trial, that there will be consideration as to whether those filings, hearings or trials should be conducted under seal, so as to protect, to continue to protect the privilege. Because the problem that McKesson faces is that having once been victimized by the individuals including, you know, who were at this then recently acquired subsidiary, HBOC, which is part of what makes this a very different case from all the other selective waiver cases out there. This recently acquired subsidiary, which basically got McKesson to pay a large premium based on false financial data that had already been for years cooked into the books of that subsidiary. That now it's being victimized yet a second time by plaintiff's counsel and related civil litigations because now they want to benefit, you know, to use Justice Jackson's words from the Hickman v. Taylor case, they want to benefit from the wits of their adversaries here. Not the wits, the knowledge. Excuse me? Not the wits. Here, the knowledge. Well, but then, you know, we could have a separate debate I suppose as to whether it was appropriate for the district court to order the report, which is really our thought process as opposed to underlying facts contained within the report. I think we're into the peroration. Why don't we hear from the SEC and while your time has expired, we will make sure to give you some rebuttal. Thank you, Your Honor. Thank you. May it please the Court. I'm Edward Schweitzer. I'm representing the Securities and Exchange Commission. And I'm here for two reasons. First, to emphasize how important the SEC views the issues before the Court and to take questions from you that go to the function of the SEC and the SEC's confidentiality agreement with McKesson. As you know, the SEC is the agency charged with enforcing the securities laws, the federal securities laws. That is a very broad responsibility, but the SEC has a limited resources to bring to bear. Accordingly, the SEC views it as very important for this Court to hold that McKesson Corporation did not waive work product protection when it shared its internal report with the SEC pursuant to a confidentiality agreement. Has Congress given you the express authority to enter into such agreements? Congress has. Or is Congress content to have the general rule of law apply? Congress has not specifically given the SEC. I would assume that the general rule of law applies to the SEC or the U.S. attorney or a third-party news agency. I would agree with that, Your Honor. And you're all in very much area. I beg your pardon? You're all in the same boat. Well, I think the SEC is not precisely in the same boat as the U.S. What is special about the SEC other than your budgetary limitations on investigations? You could go out and duplicate all of this work if you had set your mind to it. It would be very expensive, I agree. That's correct, Your Honor. But privileges are always based on an analysis of public interests. And in this case, the SEC believes that the public interest in favor of allowing a public corporation to share its internal investigative report with the SEC without waiving work product protection, and work product protection is not absolute, is very large. Okay. So what would you, as applied to the facts of this case, where you have criminal defendants who have a constitutional entitlement to seeing information, what would the SEC position be with respect to this case on those facts? Well, Your Honor, what we understand, and the SEC does not prosecute criminal violations. No, you don't. So what would you have in order to protect? In other words, what happened here is a joint investigation. There's the SEC side of things, the DOJ going after with the same agreement, essentially. So what is the SEC, in order to uphold its policy point, saying should be the end result in this case? Well, the investigative report here has multiple parts to it. There is a report that digests and organizes the conclusions reached, and then there are a number of interview summaries. And with regard to Brady, our understanding, and we may be mistaken because we don't take this kind of issue on any kind of regular basis, our understanding is that the interview summaries, to the extent they contain exculpatory material, constitute evidence that would be disclosable and required to be disclosed to the criminal defendants. But with all of the interview summaries, to select those that had exculpatory evidence for a particular defendant and to turn those over would be very different from turning over the full range of interview summaries. And the ---- So there is a waiver to the extent that the government is compelled to disclose them. So in that sense, it's selective waiver? Well, selective waiver, as the SEC uses the term, refers to the position taken in diversified where anything provided to the government is protected. The SEC has consistently, over recent years, opposed that position and did so in the Steinhardt case. This is more a limited waiver than a selective waiver. But where there have been materials turned over to the U.S. Attorney's Office in a criminal prosecution that include exculpatory evidence, it is our understanding that the law requires the criminal prosecutor to pick out those exculpatory materials. Let me make sure I understand the posture of the cases we have here. There is an order to turn over a pursuant to Brady, and that has not been appealed to us.  That's my understanding, Your Honor. And what's being appealed to us is what is potentially a much broader ruling in its consequence, and that is the waiver. That is to say, not all of the materials that were given to you by SEC, excuse me, by McKesson are necessarily Brady materials. Correct. And I understand what McKesson is primarily worried about and, therefore, derivatively, what you're worried about is, well, if giving these things over to you waives the privilege, they're not merely worried about protecting their former officers who might be criminally prosecuted. I suspect their interest in protecting them is somewhat, shall I say, limited. They're worried that these documents are going to get into the hands of plaintiffs who are bringing dollar suits against them. And because of that unwillingness or worry, you're worried about, well, okay, if this is a waiver, you're not going to get this cooperation. Am I understanding the dynamic here? That is the core of the argument, that if this Court rules that by sharing these materials with the SEC, the SEC doesn't even bring criminal prosecutions, though it does bring civil enforcement actions, and under certain circumstances may use some of the materials as evidence in those actions, though it hasn't yet. Could you protect yourself by writing a waiver that you may or may not, writing a confidentiality agreement that you may or may not have written in this case? What the contour of this one is is a matter of some dispute. But could you protect yourself, your interest, and derivatively the interest of McKesson, in writing a confidentiality agreement that says you understand that handing these things over to us necessarily means that we will hand over all Brady materials in any criminal prosecution. However, that's all you waive, period. Well, the SEC's confidentiality agreement is unlikely to include that language because it's not my understanding that the SEC is subject to Brady because it doesn't bring criminal prosecutions. Well, I don't think the government is subject to it. If it's in the hands of the government, the fact that it's in the hands of the SEC rather than the U.S. attorney, I don't think protects that material from Brady. That's an issue, Your Honor, that I don't know the answer to. Certainly, these same materials were turned over to the U.S. Attorney's Office. That is the prosecutor. If it's subject to Brady, then I get it. I don't think the U.S. attorney is sort of exempt from Brady by saying, oh, well, you know, another part of the government has this exculpatory information. Well, if the U.S. Attorney's Office were aware of those materials, that would probably be the case. It's not the defense knowing that the things going on would alert them to it. That is probably true. But the SEC is especially concerned with its confidentiality agreement, and its confidentiality agreement does provide that where the SEC is required by law to make disclosures, it will disclose. Well, required by law may in fact be, as Judge Beezer was suggesting, the attorney client. Well, it could be a court order. It could be a common law of privilege. It could be under Brady if Brady were applicable and that this came up. Okay. But just so I can focus in on what the ---- I understand the reason for all of this. Again, I want to reiterate that my questions really are designed to explore the parameters of the implications because there's a strong interest on both sides, on many sides. But what I'm concerned about now is your suggestion that you will go to a ---- whether it's called a target or not. Clearly, in this case, the SEC was looking at McKesson as an institution, right? That's what you would be doing, would be going after the company to see whether there were securities violations. The SEC, at the time it entered into the confidentiality agreement here, was investigating the restatement of earnings by McKesson. Right. Correct. And therefore, what you would be doing with the information that they gave you, they may have thought, well, you know, it's either exculpatory or it's mitigating. So that's what they hope might come out. And therefore, they give it to you and you say, well, this just confirms what we thought. And we now, using your information in part, are now going to bring this action against you. And you're suggesting that in that ---- that is a potential scenario, is that not correct? It is a potential scenario, Your Honor, but it is also well recognized that where a company has a change in management and has to deal with misconduct by particular employees in the past, and those employees have a duty to the corporate entity not to take advantage of the corporate entity, where those individuals have engaged in violations of the securities law, but the company, after a change in management, has cooperated with the SEC, there are many occasions where the SEC has brought an enforcement action against the individuals, and it has brought ---- No, I understand that. They may not ---- you may decide to take the ---- I mean, that's explicit in the Thompson memo from the Justice Department. The constraint that those seeking to enforce the waiver here invoke is that when you share information with an adverse party, you waive the privilege. You're right up front giving the potential opponent access to your internal communication. So, therefore, when you're talking to those witnesses or the CEO or CFO or whatever, they know that anything they say is going to go to somebody who may turn around and use those adversely to them. Now, you say in order to get that kind of cooperation, diversified is the way you'd like to go. What is the ---- what is the ---- No, I'm not saying, Your Honor, that diversified is the way we would like to go. The SEC has specifically not taken that position. Okay. The SEC's position is that it does not want to be burdened with confidentiality in effect imposed by the company that provides information to it. The SEC wants information and agrees to enter into confidentiality agreements only when the SEC has reason to believe that that information will substantially expedite the SEC's own investigation. But you can use it for your purposes. Correct. But it doesn't allow anybody else, even if your purposes, your use of it, indeed may include adverse action against the company that's furnishing it to you. That is a possibility that's certainly included. So what you're saying is that the SEC has the special status that, for good and sufficient reason that you've articulated, therefore, even though under the normal rubric of the law, if a company is turning over to someone who can turn around and use it adversely to them, would be considered to have waived confidentiality as against the world, you're saying, no, because it's the SEC, there is something that needs to be carved out to say it depends on who you're disclosing it to, even if they're potentially adverse. Correct. Because otherwise, the SEC would receive it. I understand why you want it. I'm trying to understand where you peg it into the rubrics. Okay. Let's finish with you for now. We'll hear from the other side. And because you have slightly different perspectives, I think it might be appropriate to allow rebuttal by both briefly. But let's hear from the other side, and then both of you will have a chance to rebut. Thank you. Good morning, Your Honors. Tim Crudo for the United States. I'm going to take ten minutes and reserve ten minutes for counsel for one of the individual defendants, Mr. McCall. Prior to McKesson turning over any documents to the United States Attorney's Office, their lawyers sent a letter that outlined the terms of the agreement. And that letter expressly provided that the United States Attorney's Office could use those materials in a criminal prosecution. It specifically provided that the company consented to disclose in any criminal prosecution that may result from the investigation those particular documents. So those were the terms going in. I don't think there was ever a question that the government would not turn over Brady or Rule 16 material. The lower court determined that the interview memoranda and the Skadden report constituted both Brady and Rule 16 material, and that's not at issue before the court today, and that it should be turned over pursuant to a protective order. Now, it's the government's position that by consenting, that those terms of that agreement provide the basis to affirm the lower court's decision, and that this Court doesn't need to wade into the more thorny issues of privilege and so forth that the company and the SEC has raised. And therefore, we think simply by referring to the terms of the agreement under which the documents were provided to the government, that the Court can affirm the lower court's decision, and that their concern is that, yes, you can, it's pretty hard to get around the agreement that they didn't understand you were going to use it, and they aren't challenging the Brady aspect in turnover to the defendants. As I hear them arguing, once the defendants get their hands on it, they can go out and use it by going well beyond whatever defense needs they might have. They may want to seek retribution and turn it over to plaintiff's counsel in these cases and so on and so forth. So what is the government's position on what, if anything, should be done about that? You've heard the SEC now saying from their standpoint they really want this information. I've invoked Larry Thompson's memo. You all seem to want it for similar reasons and, indeed, have the incentive. So the hammer or the hammer and stone approach, you know, if you give us information, we'll factor that into whether we prosecute or how hard we prosecute. So I'm just trying to sort out, keeping in mind the defendants ultimately, in the context of which you're speaking, have a constitutional right to get their hands on this material. So what's the, what is it that you would say in terms of keeping that information and that interest in mind could be done to accommodate, if anything, accommodate the SEC's or McKesson's interest here? Well, certainly I think the Court can do what it did in this case, which is to say turn the materials over and we're going to have a protective order. And fortunately, the order was stayed before the parties in this particular case could enter into that protective order, but that they could enter into a protective order such as one that was entered into in the related Hawkins matter that allows the defendants, the criminal defendants, to use those materials for purposes of the criminal proceedings. So you're comfortable with this, with that, the Hawkins protective order? Yes, we are, Your Honor. So we think on that basis, certainly the criminal defendants have a right to use that information in the context of the criminal prosecution. They're able to do so. And to the extent that the district court can provide some protections via the protective order, that's what it has provided in the order that they have. Okay. So then I gather we'll hear from, is it Mr. Goodman who's going to tell us whether the defendants are happy with that? I think Ms. O will address that issue. Okay. Yes. So if there are no more further questions, I'll turn it over to her. Thank you, Your Honor. Thank you. Did you resist intervention by McKesson? No, Your Honor. We did not. That was an agreed order? I'm sorry? It was an agreed order of intervention, all parties? We did not oppose it. That's correct. Did the other criminal defendants oppose it? I don't believe so, but thank you. Okay. Good morning, Your Honor. Alex O from Paul Weiss, Rifkin, Wharton & Garrison for Mr. McCall. Also at counsel table is co-counsel Bill Goodman representing Mr. Lapine. First to the Court's question concerning the protective order that's in place in U.S. v. Hawkins. We were approached by McKesson's counsel with a similar protective order. However, there were certain use restrictions that we could not live with as criminal defendants representing clients facing over 10 years' imprisonment. In particular, they do not let us share the report and the memoranda with lay witnesses, potential witnesses in the criminal action. The disclosure is limited to any experts or consultants who certify in advance that they will comply with the protective order's terms. Now, just to give the Court a little bit of background, Mr. Hawkins was indicted in March of 2004. He has exercised his speedy trial rights. He will be going to trial in December. The protective order was negotiated between the government and Mr. Hawkins on the eve of his deadline for filing pretrial motions, attempting to suppress his statements to McKesson's outside counsel. So whatever weighing of interests he may have made in cutting this deal, we felt that we could not agree to those terms, especially with a finding from Judge Jenkins that we are entitled to this material under Brady and Rule 16. We are, however, in response to Judge Fischer's questions, amenable to a protective order, and we have consented to entering into one in principle. We, I'm not sure. Kagan would the protective order look different depending on whether the underlying basis for turning over the materials is on the one hand Brady and Rule 16 or on the other, waiver of attorney-client and work product? I, Your Honor, I think that any protective order that takes into consideration defendant's constitutional rights under Brady would necessarily be broader than just a simple finding of waiver of attorney-client and work product protections. I'm having trouble, then, with understanding why this appeal on the waiver is even a live controversy in front of us. That is the point that we have advanced to the Court. Nobody has appealed the Brady and Rule 16 findings. Right. The reply arguments of McKesson essentially are Brady arguments. They challenge the Court's determination that the report and the memoranda have to be turned over in their entirety. The government and McKesson both objected to that below. The judge rejected that contention and ordered the entire production. Something that I don't want to get lost here is Judge Jenkins's opinion makes it plain, although he doesn't state so explicitly, that when McKesson prepared these reports and memoranda, it had a point of view. It believed that it was a victim of the fraud perpetrated allegedly by HBOC executives, of which Mr. Lapine and Ms. McCall are. It was only in March 2004 when the government indicted McKesson's executive, Richard Hawkins, for conduct occurring after the merger in January of 1999, that perhaps the government is thinking maybe its useful roadmap wasn't so useful after all. So we believe that we are entitled to see and use the entire report and the memoranda in our criminal trial. And just going back to Judge Fischer's point about the protective order, we are also defendants in some of these civil litigations. We have no incentive in sharing the materials unnecessarily. We really want unfettered use in this criminal case. And that's... But part of your response to my mootness question was, well, it's our belief that Brady and Rule 16 entitled us to something broader than we would get if it were merely a waiver. But that may be a dispute. As I understand it, they want to redact and say, well, this is useful, this isn't, we're giving you this, but we're not giving you that. That's correct, Your Honor. And do they get to be the final arbiters? Do you get to look and say, hey, I think that really is? Well, on the limited disclosure issue that the SEC has advanced, and it's in McKesson's brief, our position is that there is no basis on this record to find that the district court abused its discretion in finding that the entire report and the memoranda are required to be produced under Brady and Rule 16. Furthermore... Unredacted. Unredacted, that's correct, Your Honor. Furthermore... It's a camera operation. It can be, yeah. Yeah. Furthermore, we believe that the summaries are inadequate, which is proposed by McKesson in its final, in this reply brief. Not only does McKesson lack standing to assert this Brady Rule 16 challenge, but the cases that they cite, Mielekowski, Faro, they really balance the prosecutor's  Here, we're not talking about Mr. Crudo's work product privilege. It's something that has been turned over to the government pursuant to a confidentiality agreement that contains a giant exception. There was no carve-out in the confidentiality agreement for some sort of a negotiation of a privilege finding. It was unfettered discretion entrusted to the government to make disclosures as they see fit. And in fact, McKesson's brief below to the district court concedes that Brady and Rule 16 determinations must be made by the court and by the government. Here, the district court has found that the entire report and the memoranda should be turned over, and the U.S. Attorney's Office has stated that it intends to comply with that obligation. So we believe that there is no injury that would inure to McKesson arising from the contemplated action, which is a prerequisite for standing. The injury arises from McKesson's confidentiality agreement, which gives government permission to disclose this information, not because of the district court judge's findings concerning privilege. Unless the Court has any other questions, I will rely on my briefs. Roberts. Thank you very much. Why don't we do two minutes to each of you, four-minute total for rebuttal. Thank you, Your Honor. I'd like, I think it's important for me to respond to the concerns. You could set the clock at two. That you've raised, Judge Fletcher, regarding this potential mootness issue. The problem that McKesson has with the district court's ruling is that in determining first that privilege and work products had been waived, and then second, having made that determination, determining that Brady and Rule 16 require production, is that it didn't cause the district court to do the kind of balancing that we feel needs to be done here. We think there is an appropriate way to accommodate the defendant's legitimate constitutional and Rule 16 discovery interests balanced against McKesson's ongoing privilege and work product concerns, which is why it's important, we believe, for this work product issue, because we feel that if the conclusion is contrary to what the district court found as it should be, and that privilege has not been waived, work product hasn't been waived, that then puts the court in the position of having to say, as courts have done in this, the Furrow case, the Malkowski case, there is language in this court's Dupuy and Van Brandy decisions suggesting strongly that it is an appropriate thing to do to try to balance these competing concerns. And there's a way for these defendants, I submit, to use this information effectively, fully and effectively in their defense, but also protecting McKesson's ongoing privilege concerns. So I'm clear. Is Judge Jenkins' order ruled that you've waived broadly as against the world? It doesn't speak specifically, use exactly those words, but it is a decision which clearly says, by having produced it to the government, we have waived. They say on the attorney-client privilege, he says it was the privilege never attached in the first instance. And as to work product, he says that because the SEC and the U.S. Attorney were adversaries. So as to those interested parties, his ruling goes to those people, right? I mean, those entities. He doesn't say that it's waived for all purposes. But it's quite clear. He does say that we have, in fact, waived privilege, which is a good thing. Well, sure, you've waived it as to the entities that are using it, the government and the SEC. Yes, but he does say that with respect to these third parties, Mr. McCall and Mr. Lapine, it's been waived with respect to them. Okay. Now, but that's what I'm trying to get at. You clearly, you arguably, clearly, clearly, arguably said that they could use it in the prosecution. And you had to know that under Brady, they were going to have to disclose it. There's a difference, though, Your Honor, between disclosing underlying facts, which may be Brady or Rule 16 material, and disclosing this report, which is the thoughts of, you know, Skadden Arch. But you didn't put any restrictions on it. You said that they could use it. And if they're going to use it. As appropriate. As deemed appropriate. Nobody's appealed Judge Jenkins' order. But what is being appealed is the manner by which that disclosure and use occurs consistent with his Brady and Rule 16 determinations. So if he were to say, I find that the defendants, I reaffirm that the defendants are entitled to the report and to the underlying materials because you waived it in the confidentiality agreement with the government, then that's okay. So long as he says that's. No, we don't believe it's okay because we don't believe that it's been waived. And we take issue with that substantive part of his analysis. Namely, that it hasn't been waived. And because it hasn't been waived, in balancing the. But see, I'm losing you. What is it then, what is the constraint, other than normal Brady constraints, on what the defense is entitled to when the government says we have documents that are subject to Brady disclosure? You argue as the author of the document that the government's being too generous. Okay. But what is it that the district court is supposed to look at and say on the scope of the turnover that the report is too broad? Well, but. Isn't subject to Brady turnover. Given the lay of the land now, which is that these defendants actually have the report, albeit in another proceeding, we're not arguing, as Ms. O said, we did argue in our papers that the government should have to do summaries. And as I said at the outset, we feel an appropriate resolution here would be to permit them to use the report and metals that they already have, but under terms that would keep it under the protective umbrella of a protective order. Just as might be the case if we were talking about trade secrets. You know, if trade secret information were being turned over to these defendants, you'd have a similar concern. And other courts have made that accommodation. We have a very generous courtroom deputy who gave you four minutes, and you're now over that. Thank you very much. Didn't mean to take advantage. No, that's all right. The clock didn't appear to run on you for a while, so you know you're fine. For the SEC, I just want to emphasize that as we read Judge Jenkins' opinion, he says, he concludes that by entering into a confidentiality agreement with the SEC, something just compounded by entering into similar confidentiality agreements with the U.S. Attorney's Office, McKesson waived absolutely work product protection, not simply as to the criminal defendants here, but as to the world at large. I don't think that's a misreading of the case, and the SEC finds that extremely distressing and something that is likely to cause significant impairment to the SEC's enforcement program in the future if it becomes generally adopted as a civil principle. What defense would you make to a FOIA request? Well, at the moment, the defense would be under Provision 7a because the SEC's investigation is ongoing. Thereafter, it would be a matter of turning to McKesson to explain why the materials were confidential, but no materials would be turned over in response to a FOIA request at this time. So your materials are basically protected at this time? Well, that's a FOIA request, but to the extent there is a subpoena filed with the SEC by some private plaintiffs saying these materials are in your possession, they're not protected because work product protection was waived and we want to see them, that would be a problem. But the SEC's issues go far beyond this particular case and these particular materials. They go to the legal principle that would affect the SEC's ability to enter into these agreements in the future. As I look at the docket sheet, your appearance here is an amicus, right? Correct. You're not a party to this litigation in any sense of the word. No, I'm not. I am purely here as a friend of the Court. Okay. And we appreciate the friendship. Thank you, Your Honor. Thank you very much. Very nice argument by all of you. A tricky case, an interesting case. I think patients hate to hear doctors say this is an interesting case. Maybe you feel the same way when the judges say that. I think let's take a break. Okay. We'll take a break for ten minutes, and when we return, we will do Cooper v. City of Ashland. I understand Mr. Cooper Mayer may not be here. And then we've got one more case after that. Thank you, Your Honor.
judges: Beezer, W. Fletcher, Fisher